UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:13-CR-9-1 |
| § | |
| BRANDON REYES § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress (D.E. 21). On February 21, 2013, the Court held an evidentiary hearing. After due consideration of evidence and arguments of the parties, the Motion (D.E. 21) is DENIED.

### FACTS

On or about November 8, 2012 at around 4:30 to 5:30 in the afternoon, Defendant Brandon Reyes (Reyes) was a passenger in a white Pontiac Grand Am driven by Ruben Soliz (Soliz). The vehicle was traveling in a Corpus Christi, Texas neighborhood around Agnes, Laredo, and 19th Streets. This area is known by Corpus Christi police officers to be an average-to-high crime area involving prostitution, crack houses, and drug trafficking. Narcotics officers who had been conducting surveillance of a home that Soliz and Reyes had just left observed Soliz change lanes without first signaling. The officers requested assistance to make a traffic stop of the vehicle. The request was dispatched as a "BOLO" (be on the lookout) directed to any officers in the vicinity.

Sgt. Robert Mayorga (Mayorga) of the Corpus Christi Police Department responded to the BOLO, located the subject vehicle, and parked behind it when the vehicle stopped in front of a house. Sgt. Mayorga activated his lights, approached the

vehicle, and observed Soliz moving his hands to his right around the center console of the front seat. Soliz did not make eye contact with Mayorga and did not respond to Mayorga's knock on the driver's side window. According to Mayorga, Reyes was also moving rapidly and furtively as Mayorga approached. Most people are quiet and still when stopped for a traffic violation and they do not move until they are instructed to present a license, registration, and proof of insurance. Mayorga worried that Soliz and Reyes were trying to hide something or were accessing a weapon.

Mayorga opened the driver's door and Soliz continued to be preoccupied, moving his hands around his right side. Although Soliz did not respond to orders to place his hands on the dashboard, Reyes did initially place his hands on the dashboard as instructed. Mayorga reached in and pulled Soliz out of the car. Soliz acted stiff or "frozen" in a manner that was non-compliant with Mayorga's orders. Reyes appeared to be nervous and was looking out his window as if contemplating an effort to flee. He resumed his furtive movements and Mayorga ordered him to be still and put his hands back on the dash board.

Soliz refused to place his hands on the roof of the car as ordered so Mayorga grabbed Soliz's hands and held them to the car's roof. About that time, Sgt. James Simpson (Simpson) arrived, having also responded to the BOLO. Mayorga asked Simpson to secure the passenger. Simpson testified that, while he did not personally observe Reyes moving around inside the car, he was particularly concerned for officer safety because it is unusual for an officer to have to hold a driver's hands on the vehicle.

The posture of Mayorga and Soliz indicated to Simpson that there might be a greater likelihood of weapons and resistance than is encountered in an ordinary traffic stop.

Simpson opened the passenger door and helped Reyes out. Simpson handcuffed Reyes behind the back and proceeded to conduct a pat-down for weapons. This is standard procedure taken to ensure officer safety. In the course of the pat-down, Simpson discovered that there were plastic baggies in Reyes' pockets that felt like contraband packaged for sale. Simpson reached into Reyes' pockets and pulled out what appeared to be heroin.

## DISCUSSION

The Defendant is entitled to the protections of the Fourth Amendment to the United States Constitution which prohibits unreasonable searches and seizures. Because the Defendant was searched without a warrant, the Government bears the burden of showing by a preponderance of the evidence that the search or seizure was reasonable. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Brown v. Texas*, 443 U.S. 47, 51 (1979); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown, supra* at 50-51.

To satisfy the burden of proof in the context of a traffic stop, the Government must show that the officer making the stop had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*,

449 U.S. 411, 417-18 (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of th[e United States Supreme] Court's Fourth Amendment jurisprudence." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Absent such proof, all resulting evidence, directly and indirectly obtained, must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

Investigatory stops, such as the stop that is the subject of this case, are lawful when justified by "reasonable suspicion." *Terry*, 392 U.S. at 20-21. To show "reasonable suspicion," the officer must "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id*. at 21. "Reasonable suspicion," a less difficult standard than "probable cause," still requires an objectively reasonable belief that criminal activity may be afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The officer's subjective motivations are irrelevant. *Whren v. United States*, 517 U.S. 806, 811-13 (1996).

In this case, there is no dispute as to the traffic violation that precipitated the traffic stop. The evidence addressed whether a search of Defendant Reyes was appropriate under the circumstances. Sgt. Mayorga testified credibly that Reyes and Soliz were moving about the front seat of the car as he approached and that their rapid and furtive movements, combined with their failure to fully comply with his orders presented a safety concern that justified securing Reyes, which included a pat-down that resulted in the discovery of contraband. Sgt. Simpson's testimony supported Mayorga's in that he had credible and legitimate concerns for officer safety as he approached the

scene. His efforts to secure Reyes, including a pat-down for weapons, were no more than is standard operating procedure under the circumstances.

The Motion to Suppress (D.E. 21) is DENIED.

ORDERED this 25th day of February, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE